<pre>
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
-------------------------------------------------------------------------x
KAMELLA TEMPLE-THOMPSON, and,                    Civil Action No.
SUZETTE GORDON, on behalf of themselves
and others similarly situated,
                                                 **COMPLAINT**
                        PLAINTIFFS,
        v.

GOD'S BLESS, INC., and,                          Plaintiff Demands
CHINYERE ROSENSTEEL, individually, and,          a Trial by Jury
STEVEN ROSENSTEEL, individually,

                        DEFENDANTS.
-------------------------------------------------------------------------x
</pre>

Plaintiff KAMELLA TEMPLE-THOMPSON ("Thompson " or "plaintiff"), and SUZETTE GORDON ("Gordon " or "plaintiff"), on behalf of themselves and others similarly situated (the "Collective/Class") (altogether "plaintiffs"), by their attorneys, LEVINE & BLIT, PLLC, complaining of Defendants GOD'S BLESS, INC. ("GBI", "the company" or "defendant"), CHINYERE ROSENSTEEL, individually ("C. Rosensteel" or "defendant"), and STEVEN ROSENSTEEL, individually ("S. Rosensteel" or "defendant") (collectively "defendants"), respectfully alleges upon information and belief:

## NATURE OF THE ACTION

1.  This action is brought to remedy unpaid minimum wages and unpaid overtime wages, in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA").

2.  Defendants' actions were unlawful and Plaintiff seeks injunctive and declaratory relief, monetary, compensatory and punitive damages, liquidated damages, interest, attorneys' fees, and other appropriate legal and equitable relief pursuant to the FLSA and such other further relief as this Court deems necessary and proper.

## JURISDICTION AND VENUE

3. Jurisdiction of this Court is proper under 28 U.S.C. §1331, because the matter in controversy is a civil action arising under the Constitution, laws or treaties of the United States.

4. Venue of this action in the Southern District of Florida under 28 U.S.C. §1391 is appropriate as Defendants have their principle place of business within the district, and as the Southern District is the judicial district where a substantial part of the events or omissions giving rise to the claim occurred.

## PARTIES

5. Plaintiff Thompson is an individual who resides in Broward County, FL.

6. Plaintiff Gordon is an individual who resides in Broward County, FL.

7. Upon information and belief, defendant C. Rosensteel is a resident of Broward County, FL, and is a corporate officer of, and exercises control over, GBI.

8. Upon information and belief, defendant S. Rosensteel is a resident of Broward County, FL, and is a corporate officer of, and exercises control over, GBI.

9. Defendant GBI is a domestic business corporation with a principle place of business at 503 Lakeside Circle, Sunrise, FL., which, upon information and belief, provides medical, rehabilitative and support services to persons in group homes and residences.

10. At all times relevant to this action, Defendants were "employers" of Plaintiff within the meaning of the FLSA § 203.

11. Upon information and belief, at all times relevant to this action, Defendant GBI has been an enterprise engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C § 207(a) insofar that it: (1) has had employees engaged in commerce or in the production of goods for commerce, and handles, sells or otherwise works on goods or materials that have been moved in

or produced for commerce by any person; and (2) has had annual gross volume of sales not less than $500,000.

12. Upon information and belief, plaintiffs have ordered, and or used in their employment with GBI, supplies ,medications and equipment from outside the state of Florida.

13. Further, GBI operates as a hospital, or facility providing medical or nursing care for residents, within the meaning of Section 203(s)(1)(B) of the FLSA.

14. At all time relevant to this action, defendants C. Rosensteel and S. Rosensteel held supervisory positions over the plaintiffs, set plaintiffs' rate of pay, set plaintiffs' hours worked, determined that plaintiffs would not be paid proper overtime wages, and otherwise undertook and recommended tangible employment decisions controlling the terms and conditions of plaintiff's employment, including plaintiffs' compensation, with defendant GBI.

15. At all times relevant to this action, Plaintiffs were employees of Defendants within the meaning of the FLSA, and entitled to protection. At all times relevant to this action, plaintiffs performed services as employees for defendants within the Southern District of Florida.

16. At all times relevant to this action, Plaintiffs had the skills, experience and qualifications necessary to work in their employment position for the defendants.

## FACTUAL ALLEGATIONS

17. Plaintiff Thompson began her employment tenure with defendants in or about January, 2016, and worked continuously for defendants until approximately March, 2017.

18. Plaintiff Gordon began her employment tenure with defendants in or about April, 2016, and worked continuously for defendants until approximately April, 2017.

19. Thompson and Gordon were hired by defendants to work in one of defendants' group homes providing medical and nursing care for its residents, who were disabled and unable to care

[3]

for themselves.

20. The job duties assigned by defendants to Thompson and Gordon included all aspects of care for the disabled residents of defendants' group home, as plaintiff was usually the only employee on premises during her continuous, five-day shift. These duties included, but were not limited to administering medications, changing medical dressing and other medical apparatus, cleaning medical apparatus, cooking, washing clothes and sheets, doing dishes, cleaning patients' rooms and common areas, shopping for the patients and the home, among other things. Thompson and Gordon performed these duties throughout their respective employment tenure

21. Thompson and Gordon were hired by C. Rosensteel and S. Rosensteel, who also set plaintiffs' rates of pay and job duties from the beginning of their employment tenures with defendants to the end.

22. At the time that defendants hired Thompson and Gordon, defendants informed plaintiffs that defendants would designate Thompson and Gordon 'independent contractors' rather than employees, in a blatant and intentional attempt to violate plaintiffs' rights pursuant to the FLSA. Defendants even requested that plaintiffs sign independent contractor agreements.

23. Unquestionably, the law required defendants to classify plaintiffs as their employees rather than independent contractors, as, among other things, defendants controlled all aspects of plaintiffs' respective schedules, set their wages, and supervised and directed their employment.

24. At the time that defendants hired Thompson, defendants informed Thompson that her rate of pay would be approximately $8.05 per hour, or minimum wage under Florida law. This rate of pay remained throughout Thompson's employment tenure with defendants.

25. At the time that defendants hired Gordon, defendants informed Gordon that her rate of pay would be approximately $8.05 per hour, or minimum wage under Florida law. This rate of pay remained throughout Gordon's employment tenure with defendants.

26. At the time that defendants hired Thompson, defendants informed Thompson that her weekly work shift would be from 8 a.m. on Monday morning through 8 a.m. on Saturday morning, *continuously*, and that she was not allowed to leave the workplace during that entire one-hundred-and-twenty hour period, as she was at most times the only employee in the group home during her consecutive five (5) day shift.

27 Thompson continued to work this schedule of twenty-four (24) hour days, five consecutive days per week, throughout her tenure.

28. At the time that defendants hired Gordon, defendants informed Gordon that her weekly work shift would be from 8 a.m. on Saturday morning through 8 a.m. on Monday morning, *continuously*, and that she was not allowed to leave the workplace during that entire forty-eight hour period, as she was at most times the only employee in the group home during her consecutive five (5) day shift.

29. Gordon continued to work this schedule of twenty-four (24) hour days, two consecutive days per week, throughout her tenure.

30. At the time that defendants hired Thompson and Gordon, defendants informed plaintiffs that they could not take breaks outside of the home, and that while they could take naps sporadically at times, they had to be available to the residents of the home all twenty-four hours per day.

31. Based on defendants' instructions, Thompson and Gordon, respectively, worked twenty-four hours per day throughout their entire tenures with defendants, taking rest periods sporadically only when the work slowed, if ever.

32. At the time that defendants hired Thompson and Gordon, defendants informed plaintiffs, respectively, that they would be paid her hourly wage rate for only twelve (12) hours per day, though they were each required by defendants to remain on the work premises, working or otherwise ready and able to work, for no less than twenty-four (24) hours per day. This pattern

and practice wherein defendants only paid plaintiffs twelve (12) hours per day despite the fact that they each worked 24 hours per day remained throughout plaintiffs' respective employment tenures with defendants.

33. Needing work, and being unfamiliar with their rights pursuant to wage and hour laws, plaintiffs each acquiesced to this arrangement, ultimately receiving approximately $105 per day for each day worked for defendants, though they were required to work and/or be on defendants' premises ready and able to work twenty-four hours per day.

34. At no time during plaintiffs respective employment tenures with defendants did defendants pay plaintiffs, respectively, for more than twelve (12) hours per day of work.

35. At no time during plaintiffs' respective employment tenures with defendants did defendants pay plaintiffs, respectively overtime wages of one-and-one-half times (1.5x) their regular rates of pay for hours worked over forty (40) in a workweek.

36. Defendants were aware or should have been aware that their pay practices, as alleged herein, were in violation of the FLSA, but willfully engaged in such unlawful pay practices regardless.

37. Defendants' non-payment of minimum and overtime wages was willful and without a good faith belief of compliance with the law; therefore, plaintiffs are entitled to recover liquidated damages under the FLSA.

38. Due to defendants' intentional efforts to avoid paying plaintiffs proper minimum and overtime wages throughout their respective employment tenures, plaintiffs suffered significant damages in the form of unpaid minimum and overtime wages.

39. Accordingly, due to defendants' unlawful actions, plaintiffs are owed the entirety of their unpaid minimum and overtime wages, plus all statutory damages associated with these unpaid minimum and overtime wages, including liquidated damages, interest, attorneys' fees and costs.

## COLLECTIVE ACTION ALLEGATIONS

40. At all times within the applicable statutory period, defendants have employed dozens of aides to provide medical, rehabilitative and support services to persons in group homes and residences, who were denied minimum and overtime wages and were subjected to the same terms and conditions of employment as plaintiffs.

41. Defendants regularly engaged in the employment practice of denying minimum and overtime wages to non-exempt employees, including plaintiffs, pursuant to the acts and practices alleged herein.

42. The unlawful employment practices at issue with respect to the similarly situated employees and the named plaintiffs in this action are identical, as defendants, in all cases, have willfully denied such employees minimum and overtime wages.

43. Past and current non-exempt employees employed by defendants who are similarly situated to the named plaintiff in this action are identical, as defendants, in all cases, have willfully denied such employees minimum and overtime wages.

44. Past and current non-exempt employees employed by defendants who are similarly situated to the named plaintiffs in this action should have an opportunity to have their claims heard for alleged violations of the FLSA.

45. Certifying this collective action will afford such similarly situated employees the opportunity to receive notice of the action and allow them to opt-in to such action if they so desire.

## FIRST CAUSE OF ACTION OF PLAINTIFFS AND THE COLLECTIVE AGAINST ALL DEFENDANTS
### (Unpaid Minimum Wages Under the FLSA)

46. Plaintiffs hereby repeat, reiterate and reallege each and every allegation set forth above

with the same force and effect as if more fully set forth herein.

47. At all times relevant to this action, Defendants were covered employers pursuant to the FLSA.

48. Throughout the entirety of plaintiff Thompson's employment tenure with defendants, Thompson worked no less than approximately one-hundred-and-twenty (120) hours per week for defendants, just about each and every workweek, as a non-exempt employee pursuant to the FLSA.

49. Throughout the entirety of plaintiff Gordon's employment tenure with defendants, Gordon worked no less than approximately forty-eight (48) hours per week for defendants, just about each and every workweek, as a non-exempt employee pursuant to the FLSA.

50. Defendants failed to pay plaintiffs minimum wages for all hours worked throughout their respective employment tenures, in violation of the FLSA.

51. Defendants failure to pay minimum wages for all hours worked was willful.

52. As a result of Defendants' FLSA violations, plaintiffs are entitled to recover from defendants the entirety of their unpaid minimum wages, and an equal amount representing statutorily prescribed liquidated damages, as well as reasonable attorneys' fees and costs of this action, and interest, pursuant to the FLSA.

**SECOND CAUSE OF ACTION OF PLAINTIFFS AND THE COLLECTIVE AGAINST ALL DEFENDANTS**
**(Unpaid Overtime Wages Under the FLSA)**

53. Plaintiffs hereby repeat, reiterate and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

54. At all times relevant to this action, Defendants were covered employers pursuant to the FLSA.

55. Throughout the entirety of plaintiff Thompson's employment tenure with defendants, Thompson worked no less than approximately one-hundred-and-twenty (120) hours per week for defendants, just about each and every workweek, as a non-exempt employee pursuant to the FLSA.

56. Throughout the entirety of plaintiff Gordon's employment tenure with defendants, Gordon worked no less than approximately forty-eight (48) hours per week for defendants, just about each and every workweek, as a non-exempt employee pursuant to the FLSA.

57. Defendants failed to pay plaintiffs overtime wages of 1.5 times their regular rates of pay for all hours worked in excess of forty in a workweek, throughout their respective employment tenures, in violation of the FLSA.

58. Defendants failure to pay overtime premiums was willful.

59. As a result of Defendants' FLSA violations, plaintiffs are entitled to recover from Defendants their respective unpaid overtime wages, and an equal amount representing statutorily prescribed liquidated damages, as well as reasonable attorneys' fees and costs of this action, and interest, pursuant to the FLSA.

## JURY DEMAND

Plaintiffs respectfully requests a trial by Jury.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests that this Court enter an Order:

(a) certifying the Collective, certifying named plaintiffs as Collective's representatives, and certifying named plaintiffs' counsel as counsel for the Collective;

(b) declaring the acts and practices complained of herein are in violation of the FLSA;

(c)     directing Defendants to pay Plaintiffs and the Collective their actual damages in an amount to be determined at trial for lost minimum and overtime wages, as provided by the FLSA;

(d)     directing Defendants to pay Plaintiffs and the Collective liquidated damages, as provided by the FLSA;

(e)     directing Defendants to pay Plaintiffs' and the Collective's reasonable attorneys' fees, together with the costs and disbursements of this action; and

(f)     directing such other and further relief as this Court deems just and equitable.

Dated: New York, New York
      April 17, 2017

Respectfully Submitted,

By: RUSSELL MORIARTY, ESQ.
Florida Bar No. 110964

LEVINE & BLIT, PLLC
Attorneys for Plaintiffs

201 South Biscayne Boulevard
Suite 2800
Miami, FL 33131
Phone: (305)913-1338
Email: RMoriarty@LevineBlit.com